# O'Donnell, Appellant, *v.* Philadelphia & Reading Coal & Iron Co.

*Negligence—Master and servant—Mines and mining—Fellow servant rule—Judgment for defendant non obstante veredicto.*

In an action against a mining company to recover damages for the death of plaintiff's husband, judgment for defendant n. o. v. was properly entered where it appeared that while deceased, an employee of the defendant, was being drawn up a slope in a boat or car by means of a rope and hoisting engine, the engineer was engaged in oiling an air compressor and neglected to stop the engine at the proper time, whereby the car crashed into the engine house and the injury complained of resulted; and where it further appeared that the engineer was instructed by defendant never to leave his engine while making a hoist, and that the accident was not the result of too many duties having been imposed upon him

by the defendant. In such case the engineer and plaintiff were fellow servants.

Argued April 13, 1915.  Appeal, No. 385, Jan. T., 1913, by plaintiff, from judgment of C. P. Columbia Co., Dec. T., 1911, No. 79, for defendant n. o. v., in case of Mary O'Donnell v. The Philadelphia and Reading Coal & Iron Company.  Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband.

The facts appear in the following excerpt from the opinion of EVANS, P. J., sur defendant's motion for judgment n. o. v.:

The accident which resulted in the death of the plaintiff's husband happened during the afternoon of January 4, 1911, at the defendant's Hammond Colliery in Schuylkill County.

Binding instructions for the defendant were refused upon the trial and the jury returned a verdict for the plaintiff for $6,124.63.

Anthony O'Donnell, the plaintiff's husband, was accidentally killed.  The defendant company at the time of the accident was engaged in the mining of anthracite coal at its Hammond Colliery.  O'Donnell, the deceased husband, was employed on the day of the accident as a laborer in and about the mines.  He quit work some time during the afternoon.  He and nine other workmen, employees of the defendant company, entered a boat at the bottom of the slope for the purpose of being lifted out of the mine.  The proper signals were given and the boat started up the slope, and when the surface or top of the slope was reached, the engine was not stopped as it should have been, by the hoisting engineer, but continued on up the slope, and crashed through the engine

house, thereby wrecking the boat and killing plaintiff's husband.

The negligence of which the plaintiff complains, is, that the defendant company required the hoisting engineer, in addition to operating the tender engine, which lowered the men into the mine and lifted them therefrom, in obedience to signals, to further look after the oiling of two air compressors in the engine room while the men were in the mines. In other words, that the defendant was negligent in requiring the hoisting engineer to look after the oiling of the air compressors in addition to operating the tender engine; that too much work was required of the hoisting engineer; that too many duties were imposed on him, and that because of that fact, the defendant was negligent and such negligence caused the accident and as a consequence, O'Donnell's death.

The evidence disclosed, that the air compressors were in the same room as the tender engine, and about 35 feet distant therefrom; that some two hundred and twenty men were employed in the mines at the slope where the accident happened; that they began to arrive and go down between five and six o'clock in the morning; that Gaughan, the hoisting engineer, came on duty shortly before seven o'clock on the morning of the accident; that generally by eight o'clock, the men were all lowered into the mines; that the hoisting engineer had but little to do from that time until about two o'clock in the afternoon, when the men began to come to the bottom of the slope to be lifted out of the mines; that between eight o'clock in the morning and two o'clock in the afternoon there were but occasional lowerings or hoists to be made; that the oil cups on the air compressors required filling approximately every two hours, some of them not so often; that the lowering of the boat carrying men into the mines and lifting or hoisting the same therefrom was always done in obedience to proper signals given to the hoisting engineer and by him acknowl-

edged; that he understood the same before the boat was lowered into the mine or lifted from the mine; that all the machinery in the engine room and appliances for lowering the men into the mines and lifting them therefrom, at the time of the accident, were in good order and condition; that the indicator on the engine in plain view of the hoisting engineer, indicated at all times when a hoist was being made, the location of the boat as it travelled up the slope; that the actual time of lifting the boat from the mines carrying men was from three to four minutes ; that the hoisting engineer never complained of having too much work to do; that life would not be imperiled if the oil cups on the air compressors got empty; that at most, if they got empty and remained empty for a half hour or longer the guides on the machinery would cut and some of it perhaps stop; that about four o'clock on the afternoon of the accident Gaughan, the hoisting engineer, received a signal to make a hoist that men were in the boat; that he answered as he was required to do, before starting the engine; that he understood the signal and then immediately started the engine, to make the hoist and after doing so, left the engine and went over to fill the oil cups on the air compressors, and having stayed too long he failed to go back to the engine in time to reverse the lever when the boat reached the top of the slope, and because of such failure the boat crashed through the engine house and killed O'Donnell; that the instructions to Gaughan were never to leave his engine while making a hoist; that prior to the happening of the accident Gaughan appeared to be a competent and reliable hoisting engineer.

The main question submitted to the jury was, whether a reasonably prudent mining corporation would, under the conditions which prevailed at the Hammond colliery, have required the hoisting engineer to look after the oiling of the air compressors in addition to perform-

ing his duties as the hoisting engineer in operating the tender engine.

It should be kept in mind that the boat could only be lowered into the mines and lifted therefrom in obedience to signals given to Gaughan and that before proceeding to lower or lift the boat, he was required to answer back that he understood the signal received. If he had obeyed his instructions never to leave his engine while making a hoist the accident would not have happened. In fact it would not have happened except for his carelessness in leaving the engine while the boat was being lifted up the slope. It required from three to four minutes to make the hoist after the engine was started. The indicator on the dial in full view of Gaughan, indicated the location of the boat as it came up the slope. Up to the time of the accident Gaughan had proved to be a competent engineer. He had been in the employ of the defendant as hoisting engineer at the place where the accident occurred for eleven months before the accident. He did not complain of having too much work to do. From eight o'clock in the forenoon until approximately two o'clock in the afternoon, he had but little work to do. In fact, during that time he had nothing to do except to remain at his post and make an occasional hoist and fill the oil cups on the air compressors, and that, according to the evidence, would not take more than from four to five minutes approximately every two hours.

In Bradbury v. Kingston Coal Co., 157 Pa. 231, it was decided that: an engineer employed to run an engine at a colliery is a fellow servant of the miner whom the engineer raises and lowers in the shaft of the mine.

In this case an engineer in charge of a colliery (hoisting) engine, attempted to stop the engine by pulling his reverse lever. He pulled it a little too far, not intending to do so, and thereby caused the cage (boat) in the shaft to shoot upward rapidly. Plaintiff's decedent who was on the cage, attempted to jump off on the upper

platform, but missed his footing and fell down the shaft and was killed. The cage stopped almost at the instant he jumped off, and those who remained on it were unharmed. Held, that there could be no recovery against the Colliery Company, because Bradbury's death was due to the mistake of the engineer, a fellow servant. At page 238, Justice GREEN says:

"Now the engineer was a fellow servant of the deceased and, for his mistake, whether negligent or otherwise, the defendant company is certainly not liable. We cannot see that it is of any consequence what his reason was for attempting to stop the engine. It was not his desire, or this attempt to stop the engine, no matter from what cause, that of itself alone, caused the accident, but the manner of stopping it. Stopping the engine would have prevented the accident, and this is what the engineer attempted. There was no defect in the machinery that prevented him from stopping it just when he wanted to stop it. But he pulled the reverse lever a little too far, and that, and that alone, let on the steam and caused the upward motion. The upward motion caused the apprehension of the deceased, and that apprehension caused him to do the very rash act of jumping from the cage when it was in rapid motion, and thereby losing his life. Had the engineer pulled his lever more carefully and stopped it when he intended to, in the centre notch of the ratchet, the upward motion of the cage would not have taken place, and the accident would not have occurred. How then is the defendant to be held responsible, unless it is legally responsible for the fault, or the mistake or negligence of the engineer, who was the fellow servant of the deceased? We cannot see, and therefore are of opinion that the judgment should be reversed for that reason."

In Spees v. Boggs, 198 Pa. 112, it is held, that: A girl employed in the tailoring department of a dry goods store is a fellow-servant of a boy employed in the same store to run an elevator set apart for the use of employees

in going to and from their work from one floor of a building to another as their duties required. To constitute two persons fellow-servants, it is sufficient if they are in the employ of the same master, engaged in the same common work and performing duties and services for the same general purpose.

In the light of these decisions, Caughan and the plaintiff's deceased husband were fellow-servants at the time of the accident.

Verdict for plaintiff for $6,124.63. The court subsequently entered judgment for defendant n. o. v.

*Error assigned* was the judgment of the court.

*M. A. Kilker,* for him *C. A. Small* and *Edw. J. Flynn,* for appellant.

*Jno. F. Whalen,* with him *George Ellis* and *W. H. Rhawn,* for appellee.

PER CURIAM, May 17, 1915:

The circumstances under which the husband of appellant was killed appear in the opinion of the court below directing judgment to be entered for the defendant non obstante veredicto. It is quite clear from the unquestioned facts summarized in that opinion that his death was due solely to the negligence of a coemployee, the hoisting engineer; and there is no merit in the contention of the appellant that the defendant company had imposed duties upon the engineer which prevented him, in the operation of his engine, from observing rules 18, 19, 20 and 42 prescribed by the Act of June 2, 1891, P. L. 176.

Judgment affirmed.